IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02000-PAB-MEH

DONALD B. WINGERTER, JR., and
GREENHORN RANCH LLC,

      Plaintiffs,

v.

ALLISON H. GERBER,

      Defendant and Third Party Plaintiff,

v.

BODYSELECT LLC,

      Third Party Defendant.

---

## ORDER ON MOTION TO COMPEL DEFENDANT GERBER
## TO RESPOND TO DISCOVERY

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiffs have filed a Motion to Compel Defendant Gerber to Respond to Discovery [filed May 12, 2010; docket #63]. The matter is briefed, and I believe oral argument will not assist in deciding the motion. For the reasons that follow, the motion is **granted in part** and **denied in part**.

I.    **Background**

In 2007, Defendant Gerber invested $1 million in Plaintiff Wingerter's company, BodySelect LLC, and in 2008, Gerber invested an additional $250,000 in BodySelect. Both investments were in promissory notes issued by BodySelect that were convertible to membership interests in BodySelect. Thereafter, when Gerber notified Wingerter that she intended to sue him for fraud, Wingerter agreed to guaranty personally BodySelect's debt and to secure that guaranty with his membership interests in Sound Surgical Technologies LLC. Wingerter further agreed that his

wholly-owned limited liability company, Greenhorn Ranch LLC, would guaranty BodySelect's debt to Gerber and would secure that guaranty with a deed of trust on real property.

In the guaranties, Wingerter and Greenhorn Ranch guaranteed two promissory notes that third-party defendant BodySelect executed in favor of defendant Gerber. The first of the notes came due on August 21, 2009. BodySelect was unable to pay the balance due, which triggered the terms of the guaranties to make payment under both notes.

Plaintiffs Wingerter and Greenhorn Ranch initiated this action pursuant to 28 U.S.C. § 2201(a), seeking a declaration from this Court that the guaranties and associated security agreements Gerber obtained from them are unenforceable for lack of consideration. Plaintiffs contend that the guaranties lack consideration because they received nothing of value and Gerber suffered no detriment with respect to, or in exchange for, Wingerter's and Greenhorn Ranch's guaranties or the associated security agreement.

Conversely, Gerber has filed counterclaims against Wingerter for fraud, theft, breach of contract, and promissory estoppel. In addition, she brings claims against Greenhorn Ranch for breach of contract and promissory estoppel, and also asks that Greenhorn Ranch be held responsible for Wingerter's liabilities as his alter ego. Finally, Gerber has brought claims against BodySelect as a third-party defendant for fraud, theft, and breach of contract. She requests that the defendants be held jointly and severally liable in the amount of $1.25 million plus interest to be proved at trial, as well as the legal fees and other expenses she incurred to negotiate the personal guaranties and security agreements.

The present dispute involves Wingerter's contention that Gerber represented herself as an experienced, sophisticated, wealthy investor when, in fact, she was not experienced and sophisticated. Wingerter contends that had he known about Gerber's true investing background, he

would not have allowed her to invest in Bodyselect LLC. Ostensibly, to prove her lack of experience and sophistication, Wingerter seeks comprehensive information concerning Gerber's investments from 2005 to the present. With this information in hand, Wingerter will allegedly prove that Gerber did not justifiably and reasonably rely on any representations made by Wingerter concerning the investment in Bodyselect LLC. As I understand it, Wingerter wants to establish that Gerber was *not sophisticated and experienced* and, thus, made material representations which induced Wingerter to accept her $1.25 million investment in Bodyselect LLC. Wingerter also wants to establish that Gerber was *so sophisticated and experienced* that she was capable – both by herself and in consultation with her investment advisors – of evaluating the risk of an investment in Bodyselect LLC, such that she did not reasonably and justifiably rely on any representations that Wingerter made about the investment. Both sides of this fence would necessitate some discovery into Gerber's financial and investing background. Gerber objects to the discovery insofar as it relate to specific investments held by Gerber and Gerber's actual financial status, principally on confidentiality grounds, and on the marginal or nonexistent relevance of such information.

## II.    Legal Standard

The party moving to compel discovery must prove that the opposing party's answers are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.,* 534 F.2d 221 (10th Cir. 1976) ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete"); *see also Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986) (the burden of proof lies with the proponent to prove answers are incomplete, inadequate, or false).

The scope of evidence that is subject to discovery under the federal rules is broad:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody,

condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1) (2009). The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004).

The Court broadly construes relevancy and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D. Colo. 2009). When the requested information appears to be relevant, the party resisting discovery has the burden to establish the information is irrelevant by demonstrating the information (1) does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the harm in producing the information would outweigh the presumption in favor of broad disclosure. *Id.*; *see also Simpson v. University of Colorado*, 220 F.R.D. 354, 359 (D. Colo. 2004). Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Bonnano*, 255 F.R.D. at 553; *see also Hammond v. Lowe's Home Centers*, 216 F.R.D. 666, 670 (D. Kan. 2003).

Wingerter requests an order compelling answers to interrogatories and production of documents all relating to Gerber's financial and investing history.

## III. Analysis

In the subscription agreements associated with her investments in Bodyselect LLC, Gerber represented that she had "such knowledge and experience in financial and business matters and experience in investments that [she is] capable of evaluating the merits and risks of the prospective

4

investments." In this motion, Wingerter seeks discovery concerning the composition of Gerber's investments (to which Gerber has objected, both in writing and at the deposition). However, Gerber testified that those decisions were made by her investment advisors Ahmie Baum (whose only restriction was to keep the investments with the UBS family) and, later, Paul Coury. Gerber testified that she was provided monthly investment summaries, which she did not understand. I do not see any relevance in revealing the composition of Gerber's investments if the decisions to invest were made by someone else.

Despite Wingerter's protestations to the contrary, I find that Wingerter has already had significant opportunity for discovery into Gerber's financial prowess. Wingerter took Gerber's deposition and asked many questions about her investing sophistication, without a single objection or instruction not to answer a question (insofar as the excerpts that Wingerter supplied to me indicate).

Therefore, in light of the legitimate privacy and confidentiality concerns expressed by Gerber, and considering what might possibly be relevant to Wingerter's defenses, I believe the following information is sufficiently relevant for discovery purposes to justify requiring Gerber's responses:

1.  Gerber's net worth on the two dates of the investments in Bodyselect LLC. The Court finds that this information is *potentially* admissible in this fraud action. The underlying components of each of the two snapshots of Gerber's net worth need not be provided, but only the net worth amount, verified under penalty of perjury as with any discovery response.

2.  An identification of any investment decision(s) that Gerber personally made, the relevant time frame being the date of her receipt of the divorce settlement proceeds

to the date of the execution of the second subscription agreement. The record supplied to me already establishes that Gerber (1) chose Mr. Baum and authorized him to invest money on her behalf; (2) decided that Baum had to stay in the UBS family of investments or else get Gerber's prior approval of any investment; (3) dropped Mr. Baum and chose Mr. Coury as her new investment advisor; (4) made the decision to invest in CLRS Technology Corp.; and (5) made the decisions to invest $1 million and $250,000 in Bodyselect LLC. If there are any other specific investment decisions Gerber made during this time period (*e.g.*, being presented any investment options by Baum or Coury and making a choice; making any independent investment decision herself such as purchasing a certificate of deposit, a commodity, a mutual fund, a corporate stock or other equity or debt, etc.; or directing her advisors to, or not to, invest in certain types of investments or economic sectors, or instructing percentage allocation of her investments into different types of investments or levels of risk), Gerber should describe each such decision with the type of specificity normally required in responding to interrogatories (*e.g.*, date, identification of investment, amount of investment). If the verified response to this inquiry is "none" (other than what is identified above), Gerber should so state.

The motion to compel is denied in all other respects. Any information provided by Gerber may be designated as confidential pursuant to the Protective Order entered in this case on January 11, 2010.

## IV.    Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiffs' Motion to Compel Defendant Gerber to Respond to Discovery [filed May 12, 2010; docket #63] is **granted in part** and **denied in part** as specified herein.

SO ORDERED.

Dated this 30th day of June, 2010, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge