IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02000-PAB-MEH

DONALD B. WINGERTER, JR., and
GREENHORN RANCH LLC,

    Plaintiffs,

v.

ALLISON H. GERBER,

    Defendant and Third Party Plaintiff,

v.

BODYSELECT LLC,

    Third Party Defendant.

## ORDER ON MOTION TO COMPEL

**Michael E. Hegarty, United States Magistrate Judge**.

Defendant Gerber has filed a Motion to Compel Production of Documents Withheld on Basis of Attorney-Client Privilege with Steve Kregstein [filed November 4, 2010; docket #119]. The matter is briefed, and I believe oral argument will not assist in deciding the motion. For the reasons that follow, the motion is **denied**.

**I.    Background**

In 2007, Defendant Gerber invested $1 million in Plaintiff Wingerter's company, BodySelect LLC, and in 2008, Gerber invested an additional $250,000 in BodySelect. Both investments were in promissory notes issued by BodySelect that were convertible to membership interests in BodySelect. Thereafter, when Gerber notified Wingerter that she intended to sue him for fraud, Wingerter agreed to guaranty personally BodySelect's debt and to secure that guaranty with his

membership interests in Sound Surgical Technologies LLC.  Wingerter further agreed that his wholly-owned limited liability company, Greenhorn Ranch LLC, would guaranty BodySelect's debt to Gerber and would secure that guaranty with a deed of trust on real property.

In the guaranties, Wingerter and Greenhorn Ranch guaranteed two promissory notes that third-party defendant BodySelect executed in favor of defendant Gerber.  The first of the notes came due on August 21, 2009.  BodySelect was unable to pay the balance due, which triggered the terms of the guaranties to make payment under both notes.

Plaintiffs Wingerter and Greenhorn Ranch initiated this action pursuant to 28 U.S.C. § 2201(a), seeking a declaration from this Court that the guaranties and associated security agreements Gerber obtained from them are unenforceable for lack of consideration.  Plaintiffs contend that the guaranties lack consideration because they received nothing of value and Gerber suffered no detriment with respect to, or in exchange for, Wingerter's and Greenhorn Ranch's guaranties or the associated security agreement.

Conversely, Gerber has filed counterclaims against Wingerter for fraud, theft, breach of contract, and promissory estoppel.  In addition, she brings claims against Greenhorn Ranch for breach of contract and promissory estoppel, and also asks that Greenhorn Ranch be held responsible for Wingerter's liabilities as his alter ego.  Finally, Gerber has brought claims against BodySelect as a third-party defendant for fraud, theft, and breach of contract.  She requests that the defendants be held jointly and severally liable in the amount of $1.25 million plus interest to be proved at trial, as well as the legal fees and other expenses she incurred to negotiate the personal guaranties and security agreements.

The present dispute involves Gerber's contention that Plaintiffs/Third-Party Defendant have consented to waive the attorney-client privilege with respect to documents and information

concerning Steve Kregstein by offering him as a witness at trial. Gerber argues that pursuant to the clear language of Colo. Rev. Stat. § 13-90-108, Plaintiffs/Third-Party Defendant may not both call Mr. Kregstein to testify on their behalf *and* withhold information that may be relevant and/or necessary for cross examination. Plaintiffs/Third-Party Defendant counter that Mr. Kregstein is not being called to testify (and has not testified in deposition) as to privileged matters, but rather to facts concerning negotiations among the parties' principals; therefore, Plaintiffs/Third-Party Defendant argue they have not waived the attorney-client privilege.

**II.     Legal Standard**

Courts construe Colorado statutes to give effect to the intent of the General Assembly. *Morris v. Goodwin*, 185 P.3d 777, 779 (Colo. 2008). "To determine that intent, [courts] look first to the plain language of the statute, reading the words and phrases in context and construing them according to their common usage." *Id.* It is only when the language is ambiguous or capable of more than one meaning that a court may consider, among other factors, the consequences of a given construction, the end to be achieved by the statute, and legislative history. *Id.*; *see also Stamp v. Vail Corp.*, 172 P.3d 437, 443 (Colo. 2007).

Section 13-90-108 of the Colorado Revised Statutes provides in pertinent part, "[t]he offer of a wife, husband, attorney, clergyman, physician, surgeon, certified public accountant, or certified psychologist as a witness shall be deemed a consent to the examination, within the meaning of section 13-90-107(1)(a) to (1)(d)." The applicable statute here pertaining to the attorney-client privilege is § 13-90-107(1)(b): "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without consent of his employer concerning any fact, the knowledge of which

3

he has acquired in such capacity."

## III.  Analysis

Gerber asserts that the plain language of § 13-90-108 requires that any offer of an attorney as a favorable witness automatically serves as the offeror's consent to examine the attorney regarding all matters, including those that may be otherwise privileged. The Court disagrees.

The plain language of § 13-90-108, read together with § 13-90-107(1)(b) as required, provides that the "consent to the examination" set forth in subsection 108 applies specifically to the "examination" of an attorney as to "any communication made by the client to him or his advice given thereon in the course of professional employment," as provided in subsection 107(1)(b). Importantly, subsection 108 does not state "*any* offer" or "*any* examination," but is limited to "*the* offer of a[n] ... attorney ... as a witness shall be deemed a consent to *the* examination within the meaning of" § 13-90-107(1)(b). (Emphasis added.) Thus, reading the words and phrases in context and considering the statute as a whole, the Court finds that "consent" to waive confidentiality described in § 13-90-108 arises only when the attorney is being offered by a client as a witness to communications that may be otherwise confidential.

The Court's conclusion is bolstered by applicable Colorado case law distinguishing between confidential communications and non-confidential matters that may be disclosed by an attorney without the client's consent. Protection of the communication(s) referred to in § 13-90-107(1)(b) is characterized as the "attorney-client privilege." It is well-settled in Colorado that the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court in and for Tenth Judicial Dist.*, 533

4

P.2d 32, 35 (Colo. 1975)); *see also People v. Trujillo,* 144 P.3d 539, 542 (Colo. 2006) ("the attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations"). The privilege applies *only* to communications under circumstances giving rise to a reasonable expectation that the communications will be treated as confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). Thus, mere statements of fact are not protected by the attorney-client privilege. *Trujillo*, 144 P.3d at 545 (citing *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney")).

With these precepts in mind, the Court concludes that Gerber's interpretation of § 13-90-108 improperly expands the statute's meaning to provide that *any* offer of an attorney as a witness to *any* communication or matter concerning a client automatically serves as the client's consent to waive the attorney-client privilege. Such interpretation flies in the face of the privilege's purpose "to encourage full and frank communications between attorneys and their clients which promote the administration of justice and preserve the dignity of the individual." *People v. Swearingen*, 649 P.2d 1102, 1104 (Colo. 1982).

According to the Final Pretrial Order in this matter, Plaintiffs/Third Party Defendant offer Mr. Kregstein as a witness to "BodySelect's operations and communications with Gerber's representatives regarding the guarantees." No party disputes that these matters are not privileged. Consequently, the Court finds that Plaintiffs/Third Party Defendant have not consented to the examination of Mr. Kregstein as to privileged matters within the meaning of § 13-90-108.

## IV. Conclusion

Based upon the record herein and for the reasons stated above, it is hereby ORDERED that Defendant's Motion to Compel Production of Documents Withheld on Basis of Attorney-Client Privilege with Steve Kregstein [filed November 4, 2010; docket #119] is **denied**.

SO ORDERED.

Dated this 29th day of December, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge