IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No.  09-cv-02000-PAB-MEH

DONALD B. WINGERTER, JR., an individual, and
GREENHORN RANCH LLC, a Colorado limited liability company,

    Plaintiffs,

v.

ALLISON H. GERBER,

    Defendant,

v.

BODYSELECT LLC, a Colorado limited liability company,

    Third-Party Defendant.

_____

# ORDER
_____

    This matter is before the Court on defendant Allison H. Gerber's motion to exclude the expert testimony of Steven Segal, Esq. [Docket No. 84].  The motion is fully briefed and ripe for disposition.

**I.  BACKGROUND**

    Plaintiff Donald B. Wingerter, Jr., is the only member of plaintiff Greenhorn Ranch LLC ("Greenhorn Ranch"), is the chief executive officer and manager of third-party defendant BodySelect LLC ("BodySelect"), and is a shareholder and the former chief executive officer of Sound Surgical Technologies LLC ("Sound Surgical").  On or about August 22, 2007, defendant Allison H. Gerber loaned $1 million to BodySelect

and, in return, BodySelect gave Gerber a promissory note dated August 22, 2007 wherein BodySelect agreed to pay 8.5% interest per year on the unpaid principal balance.  Under the promissory note and the associated subscription agreement, Gerber had the right to convert any unpaid balance into membership shares in BodySelect.  The promissory note came due on August 21, 2009.  Pursuant to an April 10, 2008 promissory note, Gerber loaned BodySelect an additional $250,000 under the same terms as the August 22 note.  The April 10 note came due on April 10, 2010.  On September 25, 2008, Wingerter executed a Personal Guaranty and Security Agreement in favor of Gerber, whereby he personally guarantied BodySelect's debts to Gerber and pledged Sound Surgical common and preferred stock as security for his guaranty.  Moreover, Greenhorn Ranch also guarantied BodySelect's debts to Gerber, secured by a Deed of Trust to real property owned by Greenhorn Ranch.

BodySelect was not in a position to pay the August 22 note when it came due.  Plaintiffs filed the present declaratory judgment action on August 21, 2009 [Docket No. 1].  The complaint seeks declarations by the Court that the plaintiffs' guaranties are unenforceable due to a lack of consideration.  Gerber filed her answer, counterclaims, and third party complaint on September 24, 2009 [Docket No. 7], bringing counterclaims against Wingerter and Greenhorn Ranch and third party claims against BodySelect.  On the issue of consideration for the guaranties, Gerber alleges that Wingerter defrauded her into loaning BodySelect the $1.25 million and that Wingerter guarantied the debts only after Gerber's counsel threatened to file a lawsuit.  Gerber contends that, because plaintiffs guarantied the debts to BodySelect, she held off on filing that suit.  She also claims that, in exchange for the guaranties, she gave up her

right to convert the debts into equity in BodySelect.

## II. DISCUSSION

In support of their argument that the guaranties were not supported by consideration, plaintiffs have designated attorney Steven E. Segal, Esq. as an expert witness in this case. Plaintiffs asked Mr. Segal "to review issues related to whether, based on [his] expert opinion, [he] would expect that the type of consideration given in exchange for a personal guaranty of another party's debt obligation would be specifically referenced in the executed documentation of a personal guaranty." Docket No. 84-3 at 5. Mr. Segal notes that "Ms. Gerber . . . alleges that the Guaranties were provided in exchange for her consideration of waiving future rights to convert the Notes and forbearing from suing Mr. Wingerter on unspecified claims (the 'Alleged Consideration')." Docket No. 84-3 at 6. Mr. Segal opines that "if the parties had agreed to the Alleged Consideration, the Guaranties, or another document contemporaneously executed by the parties, including Ms. Gerber, would have specifically documented the Alleged Consideration and provided that the personal guaranties given by Mr. Wingerter and [Greenhorn Ranch], respectively, were being given in exchange for the Alleged Consideration." Docket No. 84-3 at 6.

> Pursuant to Federal Rule of Evidence 702,
>
> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Defendant argues that Mr. Segal's testimony is inadmissible pursuant to Rule 702,[1] contending that his opinions regarding legal matters will impermissibly encroach on the role of the Court and jury.  The Tenth Circuit addressed the admissibility of expert testimony relating to legal matters in *Specht v. Jensen*, 853 F.2d 805, 808-10 (10th Cir. 1988).  In *Specht*, the Tenth Circuit noted that courts "draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury."  *Specht*, 853 F.2d at 808.  The court stated that

> [t]here is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness.  While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury.

*Id.* at 808-09.  The Court identified two potential harms that can occur when an attorney usurps that role of the court in pronouncing the law: (1) the "jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of law," and (2) "testimony on ultimate issues of law by the legal expert . . . is detrimental to the trial process" as it creates the likelihood of confusing the jury with statements of law by the expert, a potential rebuttal expert, and the court.  *Id.* at 809.  Nevertheless, the Tenth Circuit observed that testimony regarding legal issues will often be permissible:  "The line we draw here is narrow.  We do not exclude all testimony regarding legal issues."  *Id.*  As an example of permissible legal testimony, the court stated that a "witness may

---

[1] Plaintiffs also argue that Segal's testimony must be excluded pursuant to Federal Rules of Evidence 402 and 403.

properly be called to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* A witness, however, is not permitted "to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809-10.

In *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730, 742-43 (10th Cir. 1993), the Tenth Circuit revisited the question of how to distinguish between permissible and impermissible expert testimony relating to legal issues. *See Zuchel*, 997 F.2d at 742-43. The *Zuchel* court upheld the district court's decision to permit an expert in police training to testify in an excessive force case. As an initial matter, the court distinguished the holding in *Specht* in part by noting that the "expert in *Specht* was an attorney and his area of expertise was constitutional law." *Id.* at 742; *see Nieto v. Kapoor*, 1998 WL 1991001, at *9 (D.N.M. Sep. 17, 1998) ("As in *Zuchel*, the expert here is not an attorney, but a professor who is a recognized expert in his field."). By contrast, "[c]ourts generally allow experts in [police training] to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Zuchel*, 997 F.2d at 742. Therefore, the *Zuchel* court emphasized that the expert "did not give an opinion on whether [the police officer's] conduct was unconstitutional," but "[r]ather he stated his belief that the conduct was inappropriate based on his understanding of generally accepted police custom and practice in Colorado and throughout the United States." *Id.* at 742-43 (quotation and alteration marks omitted).

Plaintiffs contend that Mr. Segal is permitted to describe his knowledge and

experience relating to what is "customary" in his field of expertise. *See WH Smith Hotel Services, Inc. v. Wendy's International, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (upholding the district court's admission of testimony by an expert in real estate leases regarding "custom and usage of the real estate industry" because "[e]vidence of custom and usage is relevant to the interpretation of ambiguous language in a contract"); *see also Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 79 (1st Cir. 2006) (noting that "[g]enerally, an expert may not offer an opinion concerning a legal question" but that "[e]xpert testimony on industry standards is common fare in civil litigation"). "[T]he line is not always clear between impermissible testimony about what the law is and permissible expert testimony about standard industry practice." *Ji v. Bose Corporation*, 538 F. Supp. 2d 354, 359 (D. Mass. 2008); *see Gindes v. Gindes*, 864 F. Supp. 159, 162 (D. Colo. 1994) ("The line drawn between permissible and impermissible expert testimony can be a blurred one.").[2]

Plaintiffs contend that Mr. Segal's testimony will permissibly assist the jury "in understanding matters such as complex legal documents, specialized legal concepts or terms, and custom and practice in the area with which the expert is familiar." Docket No. 95 at 5. The documents at issue, however, are not complex. They are relatively short documents describing simple transactions. Moreover, Mr. Segal does not purport

---

[2]The *Ji* court would not permit "an attorney with long experience practicing entertainment law" to testify, *inter alia*, regarding what legal precedent provided for, that there was "no statement of consideration" in a document, or that one document "has legal precedent over" another. *See Ji*, 538 F. Supp. 2d at 359-60. The expert, however, was permitted to testify regarding "common tactics used by photographers, the way that agencies respond and what their competing intentions are" because this testimony does not constitute an opinion "on the legal force of each party's actions." *Ji*, 538 F. Supp. 2d at 360.

to interpret terms of art. And, unlike in *Zuchel*, Mr. Segal's statements regarding customary practice will not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702. Plaintiffs do not proffer Mr. Segal to address the issue of whether Ms. Gerber's attorneys complied with the accepted practice of transactional attorneys in Denver, Colorado. Rather, plaintiffs seek to have him offer opinions such as that his "experience relating to personal guaranties is that a personal guaranty provided after an initial loan or extension of credit must be supported by separate and new consideration." Docket No. 84-3 at 8. This is a statement of law, not practice.

Plaintiffs contend that Mr. Segal can assist the jury in determining whether consideration supported the guaranties. The sum and substance of Mr. Segal's "factual" opinion on that issue, however, is that the inclusion of a general recital of consideration in the guaranties is evidence that Ms. Gerber, in fact, did not supply consideration in support of the guaranties. This again is nothing more than a legal assertion masked as a factual one. In Colorado, "'[t]he recital of a consideration and acknowledgment of receipt thereof must stand in the absence of contrary evidence.'" *Monus v. Colorado Baseball 1993, Inc.*, 1996 WL 723338, at *11 (10th Cir. 1996) (quoting *Burch v. Burch*, 358 P.2d 1011, 1014 (Colo. 1960) (emphasis omitted); *see In re Bucci's Estate*, 488 P.2d 216, 218 (Colo. App. 1971) ("In the present case the assignment recites a consideration of '$1.00 and other good and valuable consideration . . . .' Applying the rule in *Burch*, this recital should stand in the absence of contrary evidence."); *see also* Restatement (First) of Contracts § 82, comment b. (2010) ("A

7

Case 1:09-cv-02000-PAB-MEH   Document 146   Filed 02/08/11   USDC Colorado   Page 8 of 9

recital that a stated consideration has been given is in every case admissible evidence of the fact, though not generally conclusive."); Restatement (Second) of Contracts § 218 ("(1) A recital of a fact in an integrated agreement may be shown to be untrue. (2) Evidence is admissible to prove whether or not there is consideration for a promise, even though the parties have reduced their agreement to a writing which appears to be a completely integrated agreement."). Mr. Segal would testify that the general recital standing alone is itself sufficient to find the *absence* of consideration. See Docket No. 84-3 at 8 ("My opinion that no consideration was given by Ms. Gerber may rest solely on the fact that neither the Guaranties nor any definitive documents contemporaneously executed by Ms. Gerber reflect that she provided any consideration in exchange for the Guaranties provided by Mr. Wingerter and GR."). Allowing the jury to consider this opinion would impermissibly invite the jury to reject the controlling law in favor of Mr. Segal's view on what constitutes sufficient evidence of consideration.

As for Mr. Segal's review of other documents and records to reach the conclusion that no binding agreement was reached, plaintiffs fail to explain why the jury is not capable of reaching this conclusion on its own upon review of the same evidence pursuant to the Court's instruction on the applicable law. Mr. Segal's discussion on these points is stated in terms of his experience in transactional law, but again veils what is a legal argument on behalf of plaintiffs.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Allison H. Gerber's motion to exclude the expert

testimony of Steven Segal, Esq. [Docket No. 84] is GRANTED.


DATED February 8, 2011.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge