IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-02000-PAB-MEH

DONALD B. WINGERTER, JR., an individual, and
GREENHORN RANCH LLC, a Colorado limited liability company,

 Plaintiffs,

v.

ALLISON H. GERBER,

 Defendant,

v.

BODYSELECT LLC, a Colorado limited liability company,

 Third-Party Defendant.

_____

**ORDER**
_____

 This matter is before the Court on defendant Allison H. Gerber's motion for partial summary judgment [Docket No. 81]. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**

 Plaintiff Donald B. Wingerter, Jr., is the only member of plaintiff Greenhorn Ranch LLC ("Greenhorn Ranch"), is the chief executive officer and Manager of BodySelect LLC ("BodySelect"), and is a shareholder and the former chief executive officer of Sound Surgical Technologies LLC ("Sound Surgical"). In August 2007, defendant Allison H. Gerber loaned one million dollars to BodySelect, with 8.5% interest

per year on the unpaid principal balance, pursuant to an August 22, 2007 promissory note and subscription agreement.  The promissory note came due on August 21, 2009.  Gerber loaned BodySelect an additional $250,000.00 pursuant to an April 10, 2008 promissory note under the same terms as the August 2007 note.  The April 10, 2008 note came due on April 10, 2010.  The promissory notes gave Gerber the right to convert the debt into equity in BodySelect.

In May 2008, Gerber hired Paul Coury to be her investment advisor, and Mr. Coury contacted Wingerter to receive information regarding BodySelect.  Mr. Coury did not receive information he deemed adequate to assess the investment and, therefore, reached out to Sandy Neiman, a lawyer and mutual friend of Gerber and Wingerter.  Neiman and Wingerter began discussing the possibility of Wingerter guaranteeing BodySelect's debt to Gerber.  In the preliminary discussions the plan was for Wingerter to guarantee the $1 million promissory note and for Gerber to convert the $250,000 loan into equity.  On July 1, 2008, Gerber hired Neiman to represent her.  In a July 12, 2008 email Neiman sent Wingerter summarizing a telephone conversation between them, Neiman described the possibility that Gerber could convert some portion, or no portion, of the loans into equity immediately and that Wingerter would guarantee any unconverted portion.  Neiman also references that Gerber would retain the right to convert to equity in the future.  Two days later, Steve Kregstein, counsel for Wingerter and BodySelect, responded to Neiman's email to correct aspects of Neiman's summary that were inconsistent with what Wingerter recounted of the conversation to Kregstein and Bob Hjelmstad, Wingerter's personal accountant and BodySelect's Chief Financial Officer.  One such correction was that, "[i]n consideration for Don guaranteeing the

principal and interest on the loan . . . and securing its payment with personal assets, there would be no right to convert the debt into equity at any later date. The extent to which Allison would have an equity interest in the company would be determined only by what percentage, if any, of the note she chooses to convert into equity now." Docket No. 81-7 at 2.[1] Neiman sent an email to Kregstein dated July 22, 2008, wherein he confirmed that Wingerter "will personally guarantee the present $1 million loan; i.e., the existing document will remain in effect, with the guarantee as an addendum." *See* Docket No. 94 at 7, ¶ 9.

On September 12, 2008, Hjelmstad emailed Gerber, Coury, and Neiman financial information for BodySelect, courtesy copying Wingerter and Kregstein. Consistent with Kregstein's July 14 description of the understanding between Wingerter and Neiman, the financial documents reflected that BodySelect had three long term liabilities, "convertible debt" to two other individuals and "debt" to Gerber. *See* Docket No. 81-11 at 3-4, 6, 9. Gerber's $1 million debt was described as a "[s]traight note payable accruing interest [at] 8 1/2 %, due August 2009." Docket No. 81-11 at 3. The other two debts were described as notes "payable accruing interest [at] 8 1/2 %, . . . convertible to capital [at] $5MM pre-conversion value." Docket No. 81-11 at 3. Hjelmstad categorized Gerber's debt as non-convertible, in contrast to the two other debts listed, because Wingerter and Kregstein had told him that it was not a convertible debt. *See* Docket No. 81-9 at 13. After reviewing these financial documents, Gerber elected not to convert the $250,000 debt, but rather have the entire $1.25 million

---

[1] Hjelmstad later affirmed that this was his shared understanding.

guarantied.  Neiman informed Wingerter and Kregstein of that decision in a September 12, 2008 email.  Wingerter thereafter signed a guaranty on behalf of himself on September 25, 2008 and a guaranty on behalf of Greenhorn Ranch on October 21, 2008, acknowledging the "receipt and sufficiency" of "good and valuable consideration" in return for the guaranties.  Docket Nos. 81-13, 81-15.

Since executing the guaranties, Gerber's debt to BodySelect has been listed in BodySelect financial documents as the entire $1.25 million and has continued to be distinguished from the other two "convertible" debts.  *See* Docket No. 82-1 (filed under seal) at 2 (Feb. 23, 2010); *id.* at 3 (Dec. 31, 2009).  Furthermore, in BodySelect's 2008 tax return, signed on October 13, 2009, Gerber's debt, stated as $1 million at the beginning of the tax year and $1.25 million at the end, is similarly designated as "debt" alongside the two other "convertible" debts.  *See* Docket No. 82-3 at 3, 7.[2]  Materials provided to potential investors in BodySelect since that time have described the debts in the same manner.  BodySelect's promissory notes are now in default, and Wingerter has not paid Gerber the $1.25 million.

Plaintiffs filed the present declaratory judgment action on August 21, 2009 [Docket No. 1].  The complaint seeks declarations by the Court that the plaintiffs' guaranties are unenforceable because of a lack of consideration.  Gerber filed her

---

[2]Plaintiffs Wingerter and Greenhorn Ranch and third-party defendant BodySelect "deny" these facts but do not dispute that the information so appears in the BodySelect financial documents.  Furthermore, their "denial" affirms that "Hjelmstad's understanding" that Gerber's debt would be non-convertible was based on "internal BodySelect discussions in July 2008." Docket No. 94 at 4.  While plaintiffs note that Hjelmstad was not privy to negotiations after July 2008, they cite no evidence that the consideration recited in Kregstein's July 14 email was ever revisited.

answer, counterclaims, and third party complaint on September 24, 2009 [Docket No. 7], bringing counterclaims against Wingerter and Greenhorn Ranch and third party claims against BodySelect. Gerber has asserted six claims for relief: (1) fraud (against Wingerter and BodySelect); (2) civil theft (against Wingerter and BodySelect); (3) breach of contract (against BodySelect); (4) breach of contract (against Wingerter and Greenhorn Ranch); (5) promissory estoppel (against Wingerter and Greenhorn Ranch); and (6) alter ego (against Greenhorn Ranch).[3] In the present motion, Gerber seeks summary judgment on her third and fourth claims for relief as well as plaintiff's claims against her for declaratory relief.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir.

---

[3]On January 7, 2010, Wingerter filed what he called a "crossclaim" – though it is actually a counterclaim in response to Gerber's counterclaims – against Gerber. The counterclaim relies upon indemnity clauses found in the August 22 and April 10 subscription agreements [Docket No. 31]. On January 12, 2010, BodySelect filed a similar counterclaim against Gerber [Docket No. 34]. Gerber has filed motions to dismiss these claims [Docket Nos. 35, 38]. The Court granted Gerber's motions on July 26, 2010 [Docket No. 71].

2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III. DISCUSSION

Gerber seeks summary judgment on her claim for breach of the guaranties. "Under Colorado State law, an enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Vescent, Inc. v. Prosun Intern., LLC*, 10-cv-01103-WYD-CBS, 2010 WL 4658862, at *2 (D. Colo. Nov. 9, 2010) (citing *Denver Truck Exchange v. Perryman*, 307 P.2d 805, 810 (1957); *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128,133 (Colo. App. 2009) ("A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration.")). Plaintiffs Wingerter and Greenhorn Ranch contend that the guaranties are unenforceable because they were not supported by consideration. *See Ransom Distributing Co. v. Lazy B. Ltd.*, 532 P.2d 364, 365 (Colo. App. 1974) ("A contract of guaranty, like other contracts, must be supported by consideration.") (citing *Cripple Creek State Bank v. Rollestone*, 202 P. 115 (Colo. 1921)). Gerber responds that the guaranties each explicitly state plaintiffs' receipt of consideration. She further claims that she provided consideration by giving

up her right to convert the underlying debt into equity in exchange for the guaranties.[4]

"Consideration may be defined as 'a benefit received or something given up as agreed upon between the parties.'" *Compass Bank v. Kone*, 134 P.3d 500, 502 (Colo. App. 2006) (quoting CJI-Civ. 4th 30:5 (1998)); *see Farmer v. Farmer*, 720 P.2d 174, 177 (Colo. App. 1986) ("A benefit to the promisor or a detriment to the promisee, however slight, can constitute consideration.") (citing *Lampley v. Celebrity Homes, Inc.*, 594 P.2d 605 (Colo. App. 1979)). In the context of most contracts, "[i]t is presumed that there is consideration for a written contract, which presumption may, of course, be overcome by evidence to the contrary." *Houston Fearless Corp. v. Pehlman*, 480 P.2d 113, 115 (Colo. App. 1970) (citations omitted). That presumption does not "arise[]in contracts of guarantee." *See id.* Rather, as plaintiffs correctly point out, in the context of guaranties, consideration is "not presumed, but must be established by evidence . . . ." *Cripple Creek State Bank*, 202 P. at 116.[5] One form of sufficient evidence is the uncontroverted recital of consideration in a contract. "'The recital of a consideration and acknowledgment of receipt thereof must stand in the absence of contrary evidence.'" *Monus v. Colorado Baseball 1993, Inc.*, 1996 WL 723338, at *11 (10th Cir. 1996) (quoting *Burch v. Burch*, 358 P.2d 1011, 1014 (Colo. 1960) (emphasis omitted). In other words, while the existence of consideration is not presumed, its recital in the

---

[4]Plaintiffs do not argue that giving up conversion rights would not be adequate consideration.

[5]The passage from *Cripple Creek* concludes with the phrase "as in case of any other contract." *See Cripple Creek State Bank*, 202 P. at 116. The *Houston Fearless* court read the case as creating a different rule for guaranties than for other contracts. In this case, however, any such presumption is not implicated as the guaranties recite the receipt of consideration. The evidentiary effect of that recital is discussed below.

written instrument is sufficient proof of its existence absent evidence to the contrary. *See In re Bucci's Estate*, 488 P.2d 216, 218 (Colo. App. 1971) ("In the present case the assignment recites a consideration of '$1.00 and other good and valuable consideration . . . .' Applying the rule in *Burch*, this recital should stand in the absence of contrary evidence."); *cf.* Colo. Jury Instr., Civ. 30:7, use note ¶ 4 (4th ed. 2010) ("[A]s a general rule, a statement of consideration is conclusive proof of that fact unless evidence to the contrary is introduced.") (citing *Burch v. Burch*, 358 P.2d 1011 (Colo. 1960)). Here, there is no dispute that plaintiffs Wingerter and Greenhorn Ranch acknowledged the "receipt and sufficiency" of "good and valuable consideration" in the guaranties. Docket Nos. 81-13, 81-15. Therefore, in order to survive summary judgment, plaintiffs must present evidence to the contrary.[6] They have failed to do so.

In order to demonstrate that no consideration was exchanged for his guaranties, Wingerter tries to rebut Gerber's assertion that she gave up her right to convert the underlying debt to equity. Wingerter argues that Neiman's July 22, 2008 email stating that Wingerter "will personally guarantee the present $1 million loan; i.e. the existing document will remain in effect, with the guarantee as an addendum," Docket No. 94-15 at 1, demonstrates that the promissory note's provision for conversion to equity

---

[6] In response to Gerber's motion, plaintiffs contend that the Court may not look beyond the four corners of the guaranties in assessing the adequacy of the consideration. *But see* Restatement (Second) of Contracts § 218 (2) ("Evidence is admissible to prove whether or not there is consideration for a promise, even though the parties have reduced their agreement to a writing which appears to be a completely integrated agreement."). If, as plaintiffs suggest, the Court focuses solely on the four corners of the guaranties, plaintiffs' failure to point to anything in the guaranties that contradicts the consideration language ends the inquiry. However, plaintiffs, like Gerber, also look to evidence outside the guaranties.

8

remained in effect. Even assuming the guaranty did not function to formally modify the terms regarding conversion rights of the underlying note, as Wingerter contends, he does not identify any evidence that Gerber did not agree to forbear from exercising that right. Wingerter also contends that he "understood [Neiman's September 12 email] to mean that the terms of the original notes remained in effect such that Gerber retained her conversion rights." Docket No. 94 at 17. That reading of the email is inconsistent with both the email's wording – "[t]his is to confirm the revised agreement . . . . [a]ll other terms of the original agreement remain in effect," Docket No. 94-17 at 1 – as well as the evidence of record. For example, Hjelmstad listed Gerber's debt differently than the other, convertible, debt on BodySelect's financial statements, which was consistent with Gerber having given up her conversion rights. He listed Gerber's debt in the same manner in BodySelect's 2008 tax return, signed on October 13, 2009, as well as in materials provided to potential investors in BodySelect. Hjelmstad characterized Gerber's debt in this manner based upon internal discussions with Wingerter and Kregstein in July 2008. *See* Docket No. 94 at 4, ¶¶ 49-51; *see* Docket No. 81-9 at 9, 13, 15, 17, 19, 20.

The only other evidence cited by Wingerter are his own statements to potential investors that Gerber retains a right to convert the debt. *See* Docket No. 94-2 at 5, ¶ 17; *see also* Docket No. 94-10 (Coelho Decl.). The act of telling the investors is not material to any issue before the Court, and, as Gerber points out, the statements may not be offered as evidence that Gerber in fact did retain conversion rights. *See* Fed. R. Evid. 801, 802; Fed. R. Civ. P. 56(c)(2). While such statements might be evidence that Wingerter believed that Gerber did not ultimately give up her conversion rights upon

9

entering into the transaction, Wingerter, as noted above, does not provide the Court with any evidence that would support that belief and demonstrate the inaccuracy of the guaranties' recitals of consideration. In the absence of any evidence to the contrary, and in light of Wingerter not arguing that he should not be bound by the agreement reached by and through his agents, the Court concludes there is no genuine issue of material fact regarding the consideration supporting the guaranties.[7]

Plaintiffs also contend that the guaranties are not enforceable because "Gerber induced BodySelect to allow her to invest based on her false representations regarding her investment experience in the Subscription Agreements." Docket No. 94 at 19 (citing 4 Fletcher Cyc. Corp. § 1877 ("A note given in payment of a subscription is subject to the same defenses, when sued on, as exist in case of a suit on the subscription contract . . . .")). Wingerter relies upon *Ground Improvement Techniques, Inc. v. Merchants Bonding Co.*, 63 F. Supp. 2d 1272, 1275 (D. Colo. 1999). In *Ground Improvement Techniques*, the court cited the Restatement (Third) of Surety § 12(1), which provides that, "[i]f the secondary obligor's assent to the secondary obligation is induced by a fraudulent or material misrepresentation by the obligee upon which the secondary obligor is justified in relying, the secondary obligation is voidable by the secondary obligor." Plaintiffs, however, identify no evidence that would permit a jury to

---

[7]Greenhorn Ranch argues that it cannot be bound by its guaranty because it did not receive any benefit from Gerber in exchange for the guaranty. Greenhorn Ranch cites no authority that such is required for the guaranty to be enforceable. *Cf. Colorado State Bank of Denver v. Rothberg*, 474 P.2d 634, 636 (Colo. App. 1970) ("Whether or not the guarantor derives any immediate benefit from the contract is immaterial since consideration may be in the form of a legal detriment incurred by the promisee as a result of reliance on the guaranty contract.").

conclude that they reasonably relied upon those alleged misstatements when guaranteeing the underlying debt. Rather, Wingerter simply asserts that he would not have entered into the guaranties if he knew that Gerber was an inexperienced investor. He does not explain, or point to evidence showing, how her lack of investment experience was material to his decision to guarantee the underlying debts. *See* Restatement (Third) of Surety § 12, cmt. a ("First, the misrepresentation must have been either fraudulent or material. Second, the misrepresentation must have induced the secondary obligor to make the contract. Third, the secondary obligor must have been justified in relying on the misrepresentation.") (citation omitted).

Consequently, the Court will grant summary judgment to Gerber on her breach of contract counterclaims against Wingerter and Greenhorn Ranch. Because Wingerter and Greenhorn Ranch's claims for declaratory relief seek a declaration that the guaranties are unenforceable for lack of consideration, defendant Gerber is also entitled to summary judgment on those claims. Therefore, the Court will dismiss plaintiffs' complaint and realign the parties so that defendant Gerber will become the plaintiff in this action for purposes of pursuing her remaining claims.

Gerber also seeks summary judgment on her third-party claim for breach of the promissory notes against third-party defendant BodySelect. BodySelect does not dispute that the promissory notes are in default. Rather, it contends that it is "entitled to an offset based on damages it incurred as a result of [Gerber's] misrepresentations, including defending a claim for fraud on a transaction that it would not have entered but for Gerber's misrepresentations . . . and stopping seeking seed investors in favor of building infrastructure." Docket No. 94 at 20. BodySelect does not explain how the

11

substance of the alleged misrepresentation is material to the obligation upon which Gerber is now suing or how it caused the recited damages. In any event, BodySelect is not seeking to rescind the notes and, in fact, concedes liability on them. It simply alludes to the possibility that, if it were to recover damages from Gerber, the amount of the judgment would be "offset." To the extent BodySelect is seeking damages stemming from Gerber's alleged misstatements, however, it has yet to assert any claims to that effect in this action. Therefore, the Court finds no basis to deny summary judgment on the breach of contract claims against BodySelect or any basis upon which to award BodySelect damages so as to "offset" any amount due on those notes. Furthermore, the deadline to amend pleadings was January 4, 2010, *see* Docket No. 16 at 7, and BodySelect has neither filed a motion to amend its pleadings or argued in response to the present motion that there is good cause to permit it do so.[8]

---

[8] Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." But when the deadline to amend pleadings has passed, Federal Rule of Civil Procedure 16(b)(4) is also implicated. It provides that a "schedule may be modified only for good cause and with the judge's consent." "Although the Tenth Circuit has not adopted a rule on the interaction between Rule 15(a) and Rule 16(b), courts in this district have applied the framework articulated in *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001), to cases where the scheduling order deadline has passed." *Texas Instruments, Inc. v. BIAX Corp.*, No. 07-cv-02370-WDM-MEH, 2009 WL 3158155, at *1 (D. Colo. Sep. 28, 2009) (citations omitted). Under that framework, plaintiff must "first demonstrate . . . that it has 'good cause' for seeking modification of the scheduling deadline." *Pumpco*, 204 F.R.D. at 668 (quotations and citation omitted). Good cause "means that scheduling deadlines cannot be met despite a party's diligent efforts." *Id.* (quotations and citation omitted). If plaintiff can show good cause, the Court turns to the Rule 15(a) standard. *See id.* at 669. Pursuant to Rule 15(a), "'[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). There is a "rough similarity between the 'good cause' standard of Rule 16(b) and [the Tenth

Because plaintiffs Wingerter and Greenhorn Ranch and third-party defendant BodySelect do not contest summary judgment or dispute Gerber's calculation of damages on any other grounds, the Court will enter judgment against Wingerter, Greenhorn Ranch, and BodySelect jointly and severally in the amount of $1,389,101.24 plus $685.03 per day from August 22, 2010 until the date of final judgment, and $294,301.11 plus $145.13 per day from April 10, 2010 until the date of final judgment. The present motion, however, has not resolved all the pending claims and, because Gerber does not offer any support for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b), the awards will not be entered until the entry of final judgment in this matter.

As a final note, one of Gerber's remaining claims seeks recovery under a promissory estoppel theory. The Court has already determined that Gerber is entitled to summary judgment on her breach of contract claims. Therefore, she may not proceed on a promissory estoppel theory of liability arising out of the same promises found within the enforceable contracts. *See Corum Real Estate Grp., Inc. v. Blackrock Realty Advisors, Inc.*, Nos. 09-cv-01680-DME-MEH, 09-cv-02804-DME-BNB, 2010 WL 1957226, at *8 (D. Colo. May 14, 2010) ("[P]romissory estoppel is applicable only in the absence of an otherwise enforceable contract. The alternative remedy of promissory estoppel is never reached when there has been mutual agreement by the parties on all essential terms of a contract.") (citing *Scott Co. of Cal. v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1992) (omission marks and emphasis omitted); *see also Wheat*

---

Circuit's] 'undue delay' analysis under rule 15." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

*Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007) ("Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract."). Therefore, the Court will dismiss Gerber's fifth counterclaim for relief.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Allison H. Gerber's motion for partial summary judgment [Docket No. 81] is GRANTED. Upon the resolution of all the remaining claims, the final judgment shall reflect an award in favor of Gerber and against Wingerter, Greenhorn Ranch, and BodySelect, jointly and severally, on Gerber's claims for breach of contract in the amount of $1,389,101.24 plus $685.03 per day from August 22, 2010 until the date of final judgment, and $294,301.11 plus $145.13 per day from April 10, 2010 until the date of final judgment. It is further

**ORDERED** that defendant's fifth counterclaim for promissory estoppel is dismissed. It is further

**ORDERED** that plaintiffs' complaint [Docket No. 1] is dismissed. The parties shall be realigned such that Allison H. Gerber becomes the plaintiff and plaintiffs Donald B. Wingerter, Jr., and Greenhorn Ranch LLC as well as third-party defendant BodySelect become defendants.

DATED March 29, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge